UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:17-CR-88-RGJ-CHL

UNITED STATES OF AMERICA,                                    **Plaintiff,**

v.

JANICE PATTERSON,                                                **Defendant.**

## MEMORANDUM OPINION & ORDER

Before the Court is the Motion to Disqualify Counsel (DN 78) filed by the United States. The United States sought to disqualify James A. Earhart ("Earhart"), appointed counsel for Defendant Janice Patterson ("Patterson"). Patterson filed a response (DN 84), and the United States filed a reply (DN 85). The Court held a hearing on the United States' Motion on August 19, 2019 at which it heard the arguments of counsel and testimony from witnesses. (DNs 92, 94.)

For the reasons set forth below, the United States' Motion to Disqualify Counsel (DN 78) is **DENIED**.

**I.    BACKGROUND**

On March 9, 2017, Earhart was appointed to represented Patterson's husband, Marvin Patterson ("M. Patterson"), in the Southern District of Indiana. Order Appointing Counsel, DN 12, *USA v. Patterson*, No. 4:17-cr-06-SEB-VTW (S.D. Ind. Mar. 9, 2017). M. Patterson was charged with two counts of possession of a machine gun in violation of 18 U.S.C. §§ 922(o), 924(a)(2) and one count of possession of a sawed-off shotgun in violation of 26 U.S.C. §§ 5845, 5861(d), 5871. Indictment, DN 1, *USA v. Patterson*, No. 4:17-cr-06-SEB-VTW (S.D. Ind. Feb. 28, 2017). The gun charges arose from a search warrant issued for M. Patterson's home that was executed as part of an investigation of Patterson for health care fraud. (DN 95, at Gov't's Ex. 1.)

On the date the warrant was executed and prior to Earhart's representation of him, M. Patterson gave a recorded statement to law enforcement that overwhelmingly focused on the investigation of health care fraud and not the firearms discovered in the home and for which he was eventually charged. (DN 78, at Ex.F; DN 80.)

As part of his representation of M. Patterson, Earhart filed a motion to suppress the fruits of the search warrant arguing that the affidavit justifying the search warrant was unsupported by probable cause and the seizure of the firearms exceeded the scope of the warrant. Motion to Suppress, DN 25, *USA v. Patterson*, No. 4:17-cr-06-SEB-VTW (S.D. Ind. Sept. 12, 2017). While the United States filed a response to the motion, and Earhart filed a reply, the district court never held a hearing on the motion because the parties reached a plea agreement. Courtroom Minutes, DN 37, *USA v. Patterson*, No. 4:17-cr-06-SEB-VTW (S.D. Ind. Feb. 14, 2018). M. Patterson pleaded guilty to possession of a sawed-off shotgun, and the United States dismissed the other two counts of the indictment. Courtroom Minutes, DN 48, *USA v. Patterson*, No. 4:17-cr-06-SEB-VTW (S.D. Ind. July 24, 2018). Earhart filed a sentencing memorandum and objections to the presentence investigative report. Sentencing Memorandum, DN 45, *USA v. Patterson*, No. 4:17-cr-06-SEB-VTW (S.D. Ind. July 3, 2018). M. Patterson was ultimately sentenced to one year of probation. Judgment, DN 49, *USA v. Patterson*, No. 4:17-cr-06-SEB-VTW (S.D. Ind. July 26, 2018).

On June 27, 2017, Patterson was indicted in the instant action for health care fraud, conspiracy to commit health care fraud, money laundering, aggravated identity theft, and conspiracy to unlawfully distribute controlled substances. (DN 1.) The charges relate to Patterson's actions during her management of the Kentuckiana Medical Clinic ("KMC") and J.M. Autism Foundation ("J.M. Autism"). (DN 78, at PageID # 188.) Patterson was initially

represented by retained counsel, Frank Mascagni. (DNs 11, 17.) After Mascagni moved to withdraw (DN 68), on November 20, 2018, the Court appointed Earhart to represent Patterson (DN 69).

On June 10, 2019, the United States moved to disqualify Earhart based on his prior representation of M. Patterson. (DN 78.) The United States cited to evidence that M. Patterson was an authorized signer of multiple J.M. Autism bank accounts, is listed on the Indiana Secretary of State's website as an incorporator of J.M. Autism, acted as an ABA Services Coordinator for J.M. Autism, and received a 1099 from J.M. Autism in 2014. (DN 85, at PageID # 252.) Based on this evidence, the United States argued that M. Patterson "is an unindicted co-conspirator who had knowledge of and was participating in the crimes for which Janice Patterson is charged . . . ." (*Id.* at 253.) The United States also noted that the search warrant that resulted in M. Patterson's charges was issued as part of the investigation that led to Patterson's instant charges and stated that because of the overlap, it is likely Earhart received confidential information from M. Patterson that creates a conflict for his representation of Patterson.

In response, Earhart argued that M. Patterson's gun charges and the instant charges against Patterson bear no relationship to each other save for the common search warrant. (DN 84, at PageID # 245.) He represented that he received no discovery from the United States as part of his representation of M. Patterson that related to the health care investigation outside from the search warrant and affidavit. (*Id.* at 245-46.) The Court held an evidentiary hearing on the United States' Motion on August 19, 2019. (DNs 88, 92, 94.)

At the evidentiary hearing, the United States subpoenaed M. Patterson to testify. (DN 92, at PageID # 297.)[1] M. Patterson testified that he had retained another attorney to represent him in

---

[1] The Court will refer to the transcript of the August 19, 2019 evidentiary hearing by the "PageID #" placed into the header by the Clerk at the time of filing, not the internal pagination of the transcript itself.

3

connection with this matter. (*Id.* at 298.) He indicated that he got the name of his new attorney from Earhart and that he retained his new counsel after he was served with the subpoena to testify. (*Id.* at 302-03.) The United States also called investigator Diane Hedges with the Indiana Attorney General's Office to testify regarding the investigation that let to these charges and service of the subpoena to M. Patterson (*Id.* at 303-04.) She testified that on the date she served the subpoena on M. Patterson, Patterson was present and stated that both she and M. Patterson were "represented." (*Id.* at 305.) M. Patterson then stated that "this is all about Janice not having the same attorney representing her." (*Id.* at 306.)

Counsel for the United States then proceeded to ask Hedges a number of questions related to the investigation that led to the instant charges against Patterson and M. Patterson's relationship to the investigation. Hedges testified that she was investigating as fraudulent certain prescriptions written to M. Patterson using the DEA and NPI number of a physician who had left KMC and which were written after that physician left KMC. (*Id.* at 308-10.) She testified that she was also investigating similar suspicious prescriptions written to Patterson. (*Id.* at 311-12.) She stated that that she was presently investigating J.M. Autism and the J.M. Autism Trust for suspected fraud. (*Id.* at 312-13, 317.) She indicated that M. Patterson was both an incorporator of and served as the ABA Coordinator for J.M. Autism. (*Id.* at 312-13.) She testified that M. Patterson received a 1099 from the J.M. Autism Foundation Trust. (*Id.* at 315.) She also testified that M. Patterson was an authorized signer on several bank accounts for J.M. Autism and the J.M. Autism Trust. (*Id.* at 315-17.) She also testified that M. Patterson was listed as the Assistant Director of J.M. Autism on the Indiana Medicaid Provider form submitted to the state of Indiana. (*Id.* at 317-19.) Finally, she also testified that the search warrant executed in December 2016 of the residence

4

shared by Patterson and M. Patterson was acquired as part of the health care fraud investigation. (*Id.* at 319.)

While Earhart did not ask any questions of either M. Patterson or Hedges at the evidentiary hearing, Earhart represented to the Court that he advised M. Patterson to seek third-party counsel to discuss the instant motion to disqualify and to get advice about how to proceed. (*Id.* at 290.) Earhart stated that M. Patterson had produced an affidavit, with the advice of another attorney, regarding these issues. (*Id.* at 290-91.) In the affidavit, M. Patterson stated that after discussing the matter with his attorney Scott C. Cox, he "knowingly, intelligently, and voluntarily release[d] Mr. Earhart to discuss, testify and provide documents regarding the above-referenced matters." (DN 95, at Def.'s Ex. 1.) He further stated that he "fully, knowingly, intelligently, and voluntarily waive[d] the attorney-client privilege between [him]self and James A. Earhart relat[ed] to" his prior criminal case in the Southern District of Indiana and the instant case against Patterson. (*Id.*) Further, upon inquiry by the Court, Patterson indicated that she waived any conflict to the extent one existed. (*Id.* at 322.) Finally, Earhart affirmed at the hearing that he did not learn or receive any confidential information from M. Patterson that bears on the current case against Patterson. (*Id.* at 296.)

## II. DISCUSSION

### A. Legal Standard

One "element" of a criminal defendant's Sixth Amendment right to counsel is the "right . . . to choose *who* will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (emphasis added). However, that right "is circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). When a trial court is alerted to a defense attorney's possible conflict of interest, it must take steps to ascertain whether a change of counsel is

warranted, even if both client and counsel maintain that no issue exists. *Id.* at 160; *see also Wood v. Georgia*, 450 U.S. 261, 272–73 (1981); *Leonard v. Warden*, 846 F.3d 832, 844 (6th Cir. 2017) ("The Sixth Amendment . . . secures . . . the assistance of counsel free from conflicts of interest.")

"When presented with a motion to disqualify, the district court must make a careful inquiry, balancing the constitutional right of the defendant to representation by counsel of his choosing with the court's interest in the integrity of the proceedings and the public's interest in the proper administration of justice." *United States v. Mays*, 69 F.3d 116, 121 (6th Cir. 1995); *see also Wheat*, 486 U.S. at 160 (discussing ethical standards). A decision to disqualify counsel must be supported by "adequate reasons." *Mays*, 69 F.3d at 121.

**B.    Analysis**

Because Earhart "*previously* represented" M. Patterson, this is a "successive representation case." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir. 2003) (emphasis added). "The fear in successive representation cases is that the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing privileged information." *Id.* at 460.

Where a conflict is shown, the defendant may execute a waiver and seek to proceed with his conflicted attorney; however, the court still may choose to disqualify the attorney despite such waiver. *Id.* at 122; *see also Wheat*, 486 U.S. at 163. Further, where the court determines there is not an actual conflict but "a serious potential for conflict," the court may likewise still disqualify the attorney. *Wheat*, 486 U.S. at 164; *United States v. Jones*, 381 F.3d 114, 1119 (2d Cir. 2004) ("[W]hile a district court is required to recognize the presumption in favor of the accused's chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict.").

Based on its review of the parties' motions and exhibits, the arguments of counsel during the hearing, and the testimony of witnesses, the Court finds that the United States has not demonstrated an actual conflict, nor does the Court believe one exists in this case. SCR 3.130(1.9)(c) provides that a lawyer shall not "use information relating to the representation to the disadvantage of the former client" or "reveal information relating to the representation." M. Patterson's affidavit, which was provided based on advice from disinterested counsel, both allowed Earhart to state that he received no information from M. Patterson that would be pertinent to the instant case and demonstrated that even if Earhart did cross-examine M. Patterson at trial, he would not run afoul of his duties to his former client given the aforementioned lack of information.

SCR 3.130(1.9)(a) also provides that "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . . ." Substantially related is defined in Comment 3. It provides:

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.

SCR 3.130(1.9) cmt. 3. While the United States has certainly demonstrated that *M. Patterson* is potentially related to the current action against Patterson, it did not demonstrate that *the prior matter* in which Earhart represented M. Patterson arose from the same transaction or legal dispute as the instant case. Further, the Court does not need to assess whether there exists a substantial risk that confidential information Earhart learned during his previous representation of M.

Patterson would materially advance Patterson's position because Earhart has affirmatively—and without contradiction—represented that no such information exists.[2]

The United States argued that the Court was entitled to presume confidences are disclosed in an attorney client relationship, citing *United States v. Provenzano*, 620 F.2d 985, 1005 (3d Cir. 1980).[3] In *Provenzano*, the Third Circuit upheld a district court's decision to disqualify one defendant's counsel where that same counsel had previously represented a co-defendant on a murder conviction where "events [from] that period would be useful" as impeachment evidence against counsel's current client. *Provenzano*, 620 F.2d at 1004. In doing so, the Third Circuit held that counsel's "access to privileged information [wa]s conclusively presumed." *Id.* at 1005. The Third Circuit explained that even though "the district judge did not make explicit findings that [defendant's counsel] knew specific facts that would have involved him in conflict, the district court correct concluded that he must assume as much, since he could not actually inquire about the matter without thereby himself destroying the confidence." *Id.*

However, the United States admitted that "the presumption may not be invoked as to a knowledgeable client who maintains that, in fact, no confidential communications were made." (DN 78, at PageID # 194.) The United States cited *United States v. FMC Corp.*, 495 F. Supp. 172, 177 (E.D. Pa. 1980), in support of this proposition. In *FMC Corp.*, the Eastern District of Pennsylvania refused to disqualify counsel that had previously represented witnesses in the case

---

[2] Because the Court has concluded that no conflict exists pursuant to SCR 3.130(1.9) regarding duties to former clients, the Court likewise concludes that Earhart's representation of Patterson will not be materially limited by Earhart's former representation of M. Patterson so as to create a concurrent conflict of interest under SCR 3.130(1.7)(a)(2).

[3] The United States also cited *United States v. Kitchin*, 592 F.2d 900, 904 (5th Cir.), *cert. denied*, 444 U.S. 843 (1979), to support its argument that the Court can presume Earhart received confidential information. However, the Court finds *Kitchin* factually distinguishable from the instant situation as it involved an AUSA who was involved in the investigation that resulted in Kitchin's indictment and who had gone to work for Kitchin's counsel's firm.

during grand jury proceedings where testimony established that the witnesses "never divulged any confidential information to their lawyers during the grand jury investigation." *Id.* at 176. In so finding, the court noted that all four witnesses were "well educated" and held "professional positions involving considerable responsibility" and at least two of them were themselves lawyers. *Id.* at 175. Accordingly, the court concluded that the witnesses understood both the meaning of confidential information and the implication of any waiver of privilege. *Id.* While no party made any argument with respect to Patterson or M. Patterson's educational level or knowledge regarding legal proceedings, Earhart is certainly qualified to assess whether a conflict exists or whether confidential information was provided to him. Further, given the waiver executed by M. Patterson, Earhart is likewise able to provide the Court with his assessment. Therefore, here, given Earhart's affirmative representation, the Court need not employ the presumption.

As Earhart has affirmatively represented he possess no confidential information that would prevent him from fully cross-examining M. Patterson should the same be a witness at trial, the Court will "defer[] to [his] judgment that no conflict exist[s]." *Gillard v. Mitchell*, 445 F.3d 883, 892 (6th Cir. 2006). Because the Court has determined that no conflict exists, the United States' motion will be denied.

### III. ORDER

For the reasons set forth above, the United States' Motion to Disqualify Counsel (DN 78) is **DENIED**.

cc: Counsel of record